Argued October 11, affirmed November 8, 1968

# DONALD RAY SIMMONS, *Appellant, v.*
## GLADDEN, *Respondent.*

446 P. 2d 675

*Kenneth C. Hadley*, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Helen B. Kalil*, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

GOODWIN, J.

In this postconviction appeal the prisoner contends that his plea of guilty to a charge of armed robbery was improvident because he was coerced by. the sentencing judge and because he was misadvised by his court-appointed counsel.

With reference to alleged coercion by the sentencing judge, the transcript of the sentencing proceedings, insofar as material to this appeal, follows:

"THE COURT: We are here now on the pretrial conference of State of Oregon v. Donald Ray Simmons, No. C046077. I would like the District Attorney to state what your proof will be so that Mr. Simmons can be aware of what the state's case will consist of so that he can more intelligently decide whether he wishes to enter a plea on this case or not.

"* * * * *

"THE COURT: Fine. You heard what the state's case is going to be, Mr. Simmons, and you are entitled to have a jury hear the case and establish whether or not you are guilty beyond a reasonable doubt. On the other hand, you can look at the realities of life and life [sic] and decide what you think is the thing that you should do. I would like you to talk to your lawyer for a couple of minutes. Would you wait outside, too?

"(Thereupon, a recess was taken)

"* * * * *

"THE COURT: Mr. Simmons, as I explained to you, you have an absolute right and there would be no reflection upon your insisting on a full trial before a jury, and it would take at least ten of them to agree upon their verdict that you would be guilty of all the material elements of this crime beyond a reasonable doubt and to a moral certainty; and there is a presumption of your innocence, that you would not be required to take the stand nor could your past record be revealed to the jury. You understand you would have all those rights, do you not?

"MR. SIMMONS: Yes.

"* * * * *

"THE COURT: And the reason you are waiving those rights and the reason you are entering a

plea of guilty to this case is because you are in fact guilty of the facts as charged; is that correct?

"MR. SIMMONS: Yes.

"THE COURT: Well, all right. Now I want to explain to you that your plea of guilty does admit the material facts of this crime and you must understand that. Do you?

"MR. SIMMONS: Yes.

"THE COURT: All right. Now, I have never seen you before and I have never heard of you before. I don't know anything about you other than I have been told you have had some trouble in the past. Therefore, you realize that there have been no promises made to your attorney or to the District Attorney or to yourself that you will receive any special treatment. I don't know at this time if you will receive life imprisonment or what the punishment will be. You understand that?

"Now, has anybody made any suggestion to you that it would go easier on you if you did plead guilty?

"MR. SIMMONS: No.

"＊　＊　＊　＊　＊

"THE COURT: I want—you look—it is a very serious thing when a young fellow enters a plea. You looked at your lawyer for your answer as to whether you were guilty of this charge or not. I want you to look me in the eye and tell me whether you are or are not?

"MR. SIMMONS: Guilty.

"＊　＊　＊　＊　＊

"THE COURT: All right. I want to order a pre-sentence investigation. It will take five to six weeks for it to get to us because they want to check out you and your complete background.

"＊　＊　＊　＊　＊

"THE COURT: * * * I want to make it clear that I can't promise you probation on this offense.

On the other hand, I am not making you any promise one way or the other about anything now. I will take a look at the whole picture when I get that report in. You understand that?

"MR. SIMMONS: Yes, sir."

The prisoner has singled out and characterized as coercive the unfortunate language the sentencing judge used after the judge, the prisoner, and the attorneys had completed a wholly unnecessary and probably unwise preview of the state's evidence. The state's case, as outlined, was formidable. The prosecutor said he would offer the victim's recollection of the defendant robbing her at gun point, pistol-whipping her, and attempting a sexual assault that he later abandoned. The state's case was also said to include incriminating statements by the prisoner, and other evidence which, if received, would leave little doubt in any jury's mind about the defendant's guilt. Nonetheless, it is difficult to understand why a sentencing judge should tell a prisoner to "look at the realities of life" in deciding what to do. No matter how well intended they may be, such remarks never do any good, and frequently present reviewing courts with insurmountable obstacles to affirming judgments that may have been perfectly just and proper in the context of the courtroom situation. On the record, such remarks are a stark reminder that judges, unlike members of Congress, cannot revise their official utterances for the benefit of future readers.

The sentencing judge in this case, before taking the guilty plea, made certain that the prisoner not only understood his legal rights, but also understood the elements of the crime. The judge showed commendable concern to be certain that the prisoner freely admitted

his guilt with reference to every element of the crime. But beyond the necessary precautions, the hearing on the plea would have been a good place for verbal austerity.

■ The record in the case at bar, when read as a whole, shows that there was no coercion. The prisoner's attempt now to say that he was coerced is simply an attempt to capitalize on a verbal blunder. The attempt to construct out of isolated language some sort of inference of prejudice fails when the record is seen as a whole. We are satisfied that the atmosphere at the time the plea was taken was free from coercive influences of any kind, and that the judge's unfortunate choice of words at one point did not undo the commendable work he performed elsewhere in the hearing and did not deprive the prisoner of his freedom of choice in any fashion.

■ There is likewise no substance to the inference that in telling the prisoner and counsel to consult "for a couple of minutes" the trial court was imposing upon them any time limitation. The record reveals that the prisoner and his attorney at the hearing had all the time they needed for consultations. There could be a question with reference to time limitations imposed some six weeks later when the prisoner was sentenced. The prisoner, who was apparently free on bail, went, at the appointed time, to the wrong courtroom, and thus appeared to be absent from the sentencing proceedings. After he was located, he was hurried along, according to the testimony of his attorney, to the proper courtroom, and the sentencing court dealt rather shortly with him in the pronouncement of sentence, but this had nothing to do with the providence of his guilty plea. There is no claim that the

533

sentence was harsh or unusual. Indeed, the state could complain that the statutory demands of ORS 163.280 were not satisfied (life imprisonment unless cause is shown for a lesser penalty).

The performance of the court-appointed attorney presents another difficult question. Counsel admitted that before the plea was entered he told the prisoner that because of his recent marriage, good work record, and the absence of felony convictions during the past four years he might receive probation. Since the prisoner was pleading guilty to an offense that ordinarily carries a life sentence, and since the prisoner had a record of three prior felony convictions, such advice, with the utmost charity, can only be characterized as optimistic. The question is whether this advice so infected the guilty plea as to render it improvident as a matter of law.

■■ The postconviction trial judge refused to believe that bad advice from the court-appointed attorney induced the prisoner to enter a guilty plea which he would not have entered if he had been told that he probably had no hope of probation. We agree. Moreover, any defect in the guilty plea that may have been the result of the advice of counsel was remedied by the painstaking examination by the sentencing court at the time the plea was being received.

■■ We are not unaware of the body of decisions setting aside guilty pleas which have been induced by inadequate or inaccurate advice of counsel, and we agree that appointed counsel has a duty to represent the client, and not to appear as *amicus curiae*. See *Entsminger v. Iowa*, 386 US 748, 87 S Ct 1402, 18 L Ed 2d 501 (1967). But there is no evidence in this case that the prisoner, because of the advice of counsel,

pleaded guilty to a crime which he did not commit, or to a crime to which he would not have pleaded guilty had counsel refrained from speculating about probation. To adopt the prisoner's contention in this case would put in jeopardy every guilty plea entered, if it should be established that counsel had ventured an erroneous opinion about the type of sentence that might be imposed. One of the duties of counsel is to help an accused analyze the various choices and possibilities open to him. Counsel would be unduly handicapped in their consultations if their advice were to be held up to the critical glare of hindsight in every case of a disappointed client. Before a prisoner can claim relief grounded on the alleged incompetence of counsel, he must at least allege facts amounting to a substantial denial of the assistance of counsel. See *Clark v. Gladden,* 247 Or 629, 432 P2d 182 (1967).

The guilty plea in this case is not one that should be set aside because counsel guessed wrong about the sentencing probabilities. Neither is this a case in which it can be said that the sentencing judge and the defense counsel, through their combined errors, deprived the prisoner of a fair hearing on his guilty plea. The mistakes, if any, were not interconnected in any way, and were remedied by the care that was taken in receiving the plea.

Affirmed.